IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
CIVIL CASE NO. 1:18-CV-994

| | | |
|---|---|---|
| JOHN BONE, TIMOTHY MILES, THE NATIONAL FEDERATION OF THE BLIND, INC., AND DISABILITY RIGHTS NORTH CAROLINA, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | COMPLAINT (Jury Trial Requested) |
| v. | ) ) | |
| UNIVERSITY OF NORTH CAROLINA HEALTH CARE SYSTEM (d/b/a UNC HEALTH CARE) AND NASH HEALTH CARE SYSTEMS (d/b/a NASH UNC HEALTHCARE) | ) ) ) ) ) | |
| Defendants. | | |

## INTRODUCTION

1.      Plaintiffs John Bone, Timothy Miles, the National Federation of the Blind, Inc. ("NFB"), and Disability Rights North Carolina ("Disability Rights NC"), bring this action against the University of North Carolina Health Care System (d/b/a UNC Health Care) ("UNC") and Nash Health Care Systems (d/b/a/ Nash UNC Healthcare) ("Nash"), for denying blind individuals an equal opportunity to access their health care information, in violation of Titles II and III of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12131-12134, 12181-12189, Section 504 of the Rehabilitation Act ("Section 504"), 29 U.S.C. § 794(a), and Section 1557 of the Patient Protection and Affordable Care Act ("Section 1557"), 42 U.S.C. § 18116.

2.      Titles II and III of the ADA, Section 504, and Section 1557 all require UNC and Nash to communicate in an equally effective manner with blind individuals, and to ensure that their contractors, including medical provider groups, do the same.  UNC and Nash must provide

auxiliary aids and services and make the modifications necessary to ensure that blind individuals have an equal opportunity to participate in and enjoy the benefits of their programs and services. Appropriate auxiliary aids and services for blind individuals may include providing documents in alternative formats such as Braille, large print, audio CD, and digital navigable formats supported by computers and/or digital talking-book players, transmitted through data CD, flash drive, e-mail, or other requested media.

3. UNC, Nash, and their contractors deprive blind individuals of full and equal access to their medical services, programs, and activities. They provide critical communications, such as health care notices, visit summaries, follow-up instructions, forms, questionnaires, invoices, and other types of documents, only in standard print, a format inaccessible to blind individuals. When blind patients have requested accessible alternative formats such as Braille or large print, UNC, Nash, and their providers have routinely failed to provide them. This ineffective communication with blind UNC and Nash patients, as well as with blind family members and guardians of patients, compromises their ability to review and, if necessary, respond to communications on a timely basis, and forces them to rely on and divulge private medical and financial information to sighted third parties for assistance. This disrupts blind patients' access to their health care, prevents them from understanding and following medical instructions, and results in unfair financial penalties for not being able to access and pay medical bills on time, all leading to significant financial and personal hardship. More than four decades after the enactment of Section 504 and two decades after the enactment of the ADA, UNC and Nash, directly and through their contractors, have failed to and continue to fail to communicate effectively with blind individuals.

4. For semantic convenience throughout this complaint, the term "blind" is used in the broadest sense to include all persons who, under federal civil rights laws, have a vision-related disability that requires alternative methods to access print.

## JURISDICTION AND VENUE

5. The Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1343(a)(3)-(4).

6. Venue is proper in the Middle District of North Carolina because a substantial part of the events, actions, or omissions giving rise to this complaint occurred in this District and Defendant UNC has its primary place of business in this District. *See* 28 U.S.C. § 1391(b).

## PARTIES

7. Plaintiff John Bone is blind and uses Braille to make and receive written communications. He has been a patient of Nash, which is controlled by UNC, and its contractors since 2016. Mr. Bone is thus a qualified individual with a disability within the scope of Titles II and III of the ADA, Section 504, and Section 1557. Mr. Bone resides in Rocky Mount, North Carolina, is a constituent of Disability Rights NC, and is a member of the NFB. Nash is Mr. Bone's local hospital and he intends to return to Nash as future medical needs arise.

8. Plaintiff Timothy Miles is blind and cannot read standard print. He relies on large print or electronic documents that he can enlarge to make and receive written communications. He has been a patient of UNC and its contractors for many years and continues to receive medical attention through UNC. Mr. Miles is thus a qualified individual with a disability within the scope of Titles II and III of the ADA, Section 504, and Section 1557. Mr. Miles resides in Chapel Hill, North Carolina, is a constituent of Disability Rights NC, and is a member of the NFB. Mr. Miles plans to continue to seek medical treatment at UNC.

9.     Plaintiff the National Federation of the Blind, the oldest and largest national organization of blind persons, is a non-profit corporation duly organized under the laws of the District of Columbia with its principal place of business in Baltimore, Maryland.  It has affiliates in all 50 states, Washington, D.C., and Puerto Rico.  The vast majority of its approximately 50,000 members are blind persons who are recognized as a protected class under federal laws. The NFB is widely recognized by the public, Congress, executive agencies of government, and the courts as a collective and representative voice on behalf of blind Americans and their families.  The NFB promotes the general welfare of the blind by assisting the blind in their efforts to integrate themselves into society on terms of equality and by removing barriers that result in the denial of opportunity to blind persons in virtually every sphere of life, including education, health care, employment, family and community life, transportation, and recreation. The NFB has many members, including Plaintiffs John Bone and Timothy Miles, who reside in North Carolina, rely on UNC and Nash for their health care needs either currently or in the future, and seek to access their critical health care information on a private and equal basis.

10.     The ultimate purpose of the NFB is the complete integration of the blind into society on a basis of equality.  This objective includes the removal of legal, economic, and social discrimination.  As part of its mission and to achieve these goals, the NFB has worked actively to ensure that the blind have an equal opportunity to access information related to their health care by working with the Centers for Medicare and Medicaid to ensure provision of accessible communications to blind Medicare applicants, recipients, and beneficiaries, and by partnering with private companies to provide accessible health-related technology to the blind.  Indeed, before filing the present lawsuit, the NFB wrote to UNC and Nash in an attempt to work

4

collaboratively to provide accessible formats for blind patients on a systemic basis, but UNC and Nash declined this offer.

11.     Plaintiff Disability Rights North Carolina is a North Carolina non-profit corporation that is a "person" authorized to seek legal and equitable relief.  Disability Rights NC is part of the federally mandated protection and advocacy ("P&A") system for people with disabilities.  Its principle place of business is in Raleigh, North Carolina.  As the North Carolina P&A, Disability Rights NC is authorized to pursue administrative, legal, and other appropriate remedies to protect and advocate for the legal rights of individuals with disabilities and to redress incidents of discrimination in the state.  Ending discriminatory practices by North Carolina health care providers is directly in keeping with Disability Rights NC's overarching purpose: the protection of, and advocacy for, the rights of individuals with disabilities.

12.     Disability Rights NC represents the interests of, and is accountable to, members of the North Carolina disability community.  For example, Disability Rights NC is required by federal law to maintain a governance structure that ensures that the P&A is reflective of and responsive to the disability community.  Thus, more than half of Disability Rights NC's board of directors and advisory council members are individuals with disabilities or family members, guardians, or advocates for such individuals.  Disability Rights NC also conducts annual surveys of the North Carolina disability community to determine the specific areas of advocacy on which the organization will focus.  In this action, Disability Rights NC represents the interests of its blind constituents in North Carolina who require medical documents in alternative formats.

13.     Defendant University of North Carolina Health Care System is an integrated health care system owned by the state of North Carolina and established by state law, N.C.G.S. § 116-37.  It currently consists of UNC Hospitals and its provider network, the clinical program of

the UNC School of Medicine, and eleven affiliate hospitals and hospital systems across the state, including Nash Health Care Systems. UNC employs and contracts with numerous providers for the delivery of medical services in its facilities. UNC's principal place of business is in Chapel Hill, North Carolina. In financial year 2017, UNC had more than $4.5 billion in total assets, $3.9 billion in net operating revenue, and more than $179 million in operating income.

14. Defendant Nash Health Care Systems is a non-profit hospital affiliate of UNC. Nash operates a range of medical care and services in the Rocky Mount, North Carolina area, including Nash General Hospital, Nash Day Hospital Coastal Plain Hospital, and the Bryant T. Aldridge Rehabilitation Center. Nash employs and contracts with numerous providers for the delivery of medical services in its facilities. Nash's principal place of business is in Rocky Mount, North Carolina. In financial year 2016, Nash had more than $445 million in total assets and more than $220 million in net operating revenue.

## FACTS

### John Bone

15. Mr. Bone, a resident of Rocky Mount, North Carolina, relies on Nash for his emergency medical needs.

16. Mr. Bone visited Nash General Hospital to receive emergency medical services in December 2016, and again in or about June and July 2017. During Mr. Bone's 2016 visit, he received services from Nash directly and from its contractors Emergency Coverage Corporation, Nash X-Ray Associates, NC Inpatient Medicine Associates, and Rocky Mount Urology Associates. During Mr. Bone's 2017 hospitalization, he received services again from Nash directly and from its contractors Carolina Rehabilitation and Surgical Associates, Emergency Coverage Corporation, Hospitalist Medicine Physicians of North Carolina, PLLC, Nash X-Ray

6

Associates, and Providence Anesthesiology Associates. Upon information and belief, all of these entities are either components or contractors of UNC and/or Nash.

17. During these two hospital visits, Mr. Bone informed hospital and provider staff that he was blind and needed to receive medical bills in Braille. The staff did not ask Mr. Bone to take any additional steps to obtain medical bills in Braille.

18. Neither the hospital nor its contactors initially sent bills to Mr. Bone in Braille. Instead, Mr. Bone received all of the bills related to his hospital visits in print.

19. Mr. Bone could not read the print bills and did not know how much money he owed or who to pay for his two emergency medical visits.

20. The hospital and its contractors continued sending Mr. Bone second and final bill notices in print; he accrued late fees; and Nash and at least three of its contractors referred him to collection agencies. The creditors pursued payment from Mr. Bone and threatened him.

21. Only after counsel for Mr. Bone wrote to Nash did it agree to provide Braille invoices for previously sent bills. None of Nash's contractors, however, have provided Braille invoices. Thus, Mr. Bone still does not know how much money he owes for his two emergency medical visits. Furthermore, UNC, Nash, and their contractors have all failed to address whether Mr. Bone could expect to receive Braille documents going forward without attorney involvement. They have not provided any assurances that the hospital system would ensure timely provision of alternative formats on a systemic basis.

22. Mr. Bone wants to review his information related to his medical care with Nash, including invoices, privately and independently. He could do so if UNC, Nash, and its contractors provided critical written communications to him in Braille.

**Timothy Miles**

7

23.     Mr. Miles resides in Chapel Hill, North Carolina and is a regular patient of several different medical practices operating out of UNC.  He visits a UNC provider at least once every six months and often more frequently.  For example, between June and August 2018, Mr. Miles visited three different UNC practices.  Mr. Miles also uses UNC Urgent Care.

24.     During visits to UNC providers, Mr. Miles receives standard print versions of documents and often asks the staff for large print versions of the documents instead.  These include notices he is asked to sign, forms, visit summaries, and follow-up instructions.  UNC providers consistently refuse to provide Mr. Miles with these documents in large print.  Some providers have offered to read documents aloud to Mr. Miles, but this is not effective for Mr. Miles, who, particularly in the case of visit summaries and follow-up instructions, wants to have a document to take home with him to review after his visits.  He does not want to be forced to memorize all of the information contained in these documents.  With respect to notices, these documents are often long and provider staff typically paraphrase and attempt to summarize the contents, rather than read the entire notice verbatim.  Such summarizing does not provide Mr. Miles with all of the same information contained in the standard print notices.

25.     Mr. Miles also receives all of his invoices from UNC providers in standard print. These invoices typically come from UNC's billing department directly and he has called UNC to request large print copies.  For example, in December 2017, Mr. Miles called the billing department to ask for an end of year summary of all of his bills in large print.  The billing department responded by telling Mr. Miles that it would "look into it."  He never heard back from the billing department about this request or received large print documents as a result.  On other occasions, the billing department has told Mr. Miles that its medical billing system does not allow for large print billing statements.  Only following a letter from Mr. Miles' counsel

regarding UNC's failure to provide accessible formats, did UNC mail Mr. Miles large print documents related to some recent visits with UNC providers.

26.     UNC has failed to ensure that Mr. Miles receives large print documents in a timely manner, independent of attorney involvement.  For example, after UNC mailed Mr. Miles these select large print documents, Mr. Miles visited two different UNC practices on or about October 10, 2018, and October 19, 2018.  During each visit, Mr. Miles requested large print documents, but was told by staff that they could not provide them.  During one of his visits, Mr. Miles could not access the provider's instructions that he received in standard print at the end of his visit.  Although staff attempted to read the instructions out loud to him, he was not feeling well at the time and believed he was unlikely to be able to remember all of the instructions.  Mr. Miles wants to be able to access his health care information independently, without having to disclose personal medical information to third parties.  He could do so if UNC and its contractors provided him with large print documents.

**CLAIMS FOR RELIEF**

**COUNT I**
**Violation of Title II of the Americans with Disabilities Act**
**(Against UNC)**

27.     Plaintiffs incorporate the allegations in the preceding paragraphs, as if alleged herein.

28.     Mr. Bone, Mr. Miles, and other NFB members and blind constituents of Disability Rights NC are individuals with a disability protected by the ADA, *see* 42 U.S.C. § 12102, and qualified to receive health services from UNC, *see* 42 U.S.C. § 12131(2).

29.     UNC is a public entity subject to Title II of the ADA.  *See* 42 U.S.C. § 12131(1).

9

30.     Title II of the ADA guarantees qualified individuals an equal opportunity to access the benefits of the services, programs, or activities of a public entity.  42 U.S.C. § 12132. It provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."  *Id.*

31.     Discrimination includes failure by a public entity to take appropriate steps to ensure its communications with participants with disabilities are as effective as communications with participants without disabilities and failure to furnish them appropriate auxiliary aids and services when necessary to afford an equal opportunity to participate in the services and activities of the entity.  28 C.F.R. § 35.160.  For the communications to be effective, auxiliary aids and services must be provided in accessible formats, in a timely manner, and in such a way as to protect the privacy and independence of the individual with a disability.  *Id.*  Public entities must give primary consideration to the requests of individuals with disabilities when considering what types of auxiliary aids and services are necessary.  *Id.*

32.     UNC is required to ensure that it, its affiliated hospitals, and its contractors comply with Title II of the ADA.  *See* 28 C.F.R. pt. 35, App. B, at 660 (2017).

33.     UNC's provision of health care, directly and through affiliates like Nash, as well through its contractors, constitutes a service, program, or activity subject to Title II of the ADA.

34.     UNC has failed and is failing to meet its obligation to provide blind individuals an equal opportunity to use and benefit from its health care services, programs, and activities, whether provided directly, through affiliated hospitals like Nash, or through contractors.  In failing to provide blind patients like Mr. Bone and Mr. Miles with accessible formats such as Braille and large print, UNC has refused to provide the auxiliary aids and services necessary to

10

communicate with blind patients in an equally effective and timely manner that protects their privacy and independence.

35.     Examples of UNC's, its affiliate hospitals, and its contractors' inaccessible communications include, but are not limited to, notices, correspondence, forms, questionnaires, visit summaries, follow-up instructions, and billing information—all of which are delivered in standard print.

36.     Because Mr. Bone, Mr. Miles, and other NFB members and Disability Rights NC constituents cannot independently access standard print, they must either find and rely on third-party assistance, which intrudes upon the privacy of their personal medical and financial information, or forego accessing their critical health care information altogether.  UNC's failure to communicate effectively with blind patients puts their health at risk and, as occurred with Mr. Bone, increases their chances of incurring fines and damaging their credit scores, due to late payment of medical bills received in standard print.

37.     Accessible formats such as Braille and large print are auxiliary aids and services under the Title II regulations.  28 C.F.R. § 35.104.  Numerous governmental agencies and commercial entities already provide individual account and benefits information to blind persons in similar accessible formats.

38.     As a result of UNC's actions and omissions, Mr. Bone, Mr. Miles, and other NFB members and Disability Rights NC constituents have suffered and will continue to suffer irreparable harm: they have suffered and continue to suffer from discrimination and unequal access to UNC's health care programs, services, or activities.  If there is no change in the status quo, Mr. Bone, Mr. Miles, and other NFB members and Disability Rights NC constituents will be denied their right to access and engage fully in the provision of their health care.

39.     UNC's failure to meet its obligations to communicate with blind patients in an equally effective manner constitutes an ongoing and continuous violation of the ADA and its implementing regulations.  Unless restrained from doing so, UNC will continue to violate the ADA.  Unless enjoined, UNC's conduct will continue to inflict injuries for which Plaintiffs have no adequate remedy at law.

40.     The ADA authorizes injunctive relief as appropriate to remedy acts of discrimination against persons with disabilities.  42 U.S.C. § 12188(a)(1).

41.     UNC's refusal to communicate with blind patients in an equally effective manner, through the provision of alternative formats, was done intentionally or with deliberate indifference to the protected rights of Mr. Bone, Mr. Miles, and other NFB members and Disability Rights NC constituents.  For example, even after counsel for Plaintiffs wrote to Defendants, informed them that they were violating Title II of the ADA, among other laws, by failing to provide accessible formats for blind patients, and offered to work collaboratively to fix the problem, Defendants declined Plaintiffs' offer and continued to violate the law.  Mr. Miles was unable to obtain large print documents during two of his latest visits to UNC medical practices and facilities in October 2018, after UNC had been notified of this issue by Plaintiffs' counsel.

42.     Plaintiffs are entitled to injunctive relief, as well as reasonable attorneys' fees and costs.  Mr. Bone and Mr. Miles are also entitled to compensatory damages.

**COUNT II**
**Violation of Title III of the Americans with Disabilities Act**
**(Against Nash)**

43.     Plaintiffs incorporate the allegations in the preceding paragraphs, as if alleged herein.

44. Mr. Bone and other NFB members and blind constituents of Disability Rights NC are individuals with a disability protected by the ADA. *See* 42 U.S.C. § 12102.

45. Title III of the ADA guarantees individuals with disabilities full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation. 42 U.S.C. § 12182.

46. Title III of the ADA mandates, *inter alia*, that it is unlawful to deny individuals with disabilities the opportunity to "participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations" of a place of public accommodation, or to provide them with an opportunity "that is not equal to that afforded to other individuals." 42 U.S.C. § 12182(b)(1)(A)(i)-(ii).

47. Title III of the ADA further requires places of public accommodation to "take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services." 42 U.S.C. § 12182(b)(2)(A)(iii). Places of public accommodation must furnish appropriate auxiliary aids and services, such as Braille and large print, where necessary to communicate effectively with individuals with disabilities. 28 C.F.R. § 36.303. To be effective, "auxiliary aids and services must be provided in accessible formats, in a timely manner, and in such a way as to protect the privacy and independence of the individual with a disability." *Id.*

48. Nash's hospitals and professional offices of health care providers constitute public accommodations under the ADA. *See* 42 U.S.C. § 12181(7)(F). Because Nash owns, leases, or operates its affiliated hospitals and health care provider offices, it must abide by the mandates of Title III of the ADA. *See* 28 C.F.R. § 36.201(a).

49. Health care, including information about health care, is a good, service, facility, privilege, advantage, and/or accommodation provided by Nash to its patients and patient representatives.

50. Nash has failed and is failing to meet its obligation to provide blind individuals full and equal enjoyment of its health care services. In failing to provide blind patients like Mr. Bone with accessible formats such as Braille, Nash has refused to provide the auxiliary aids and services necessary to communicate with blind patients in an effective and timely manner that protects their privacy and independence.

51. Examples of Nash's and their contractors' inaccessible communications include, but are not limited to, notices, correspondence, forms, questionnaires, visit summaries, follow-up instructions, and billing information—all of which are delivered in standard print.

52. Because Mr. Bone and other NFB members and Disability Rights NC constituents cannot independently access standard print, they must either find and rely on third-party assistance, which intrudes upon the privacy of their personal medical and financial information, or forego accessing their critical health care information altogether. Nash's failure to communicate effectively with blind patients puts their health at risk and, as occurred with Mr. Bone, increases their chances of incurring fines and damaging their credit scores, due to late payment of medical bills received in standard print.

53. Accessible formats such as Braille and large print are auxiliary aids and services under the Title III regulations. 28 C.F.R. § 36.303(b)(2). Numerous governmental agencies and commercial entities already provide individual account and benefits information to blind persons in similar accessible formats.

14

54.     As a result of Nash's actions and omissions, Mr. Bone and other NFB members and Disability Rights NC constituents have suffered and will continue to suffer irreparable harm: they have suffered and continue to suffer from discrimination and unequal access to Nash's health care services.  If there is no change in the status quo, Mr. Bone and other NFB members and Disability Rights NC constituents will be denied their right to access and engage fully in the provision of their health care.

55.     Nash's failure to meet its obligations to communicate with blind patients in an effective manner constitutes an ongoing and continuous violation of the ADA and its implementing regulations.  Unless restrained from doing so, Nash will continue to violate the ADA.  Unless enjoined, Nash's conduct will continue to inflict injuries for which Plaintiffs have no adequate remedy at law.

56.     The ADA authorizes injunctive relief as appropriate to remedy acts of discrimination against persons with disabilities.  42 U.S.C. § 12188(a)(1).

57.     Plaintiffs are entitled to injunctive relief, as well as reasonable attorneys' fees and costs.

## COUNT III
### Violation of Section 504 of the Rehabilitation Act
### (Against UNC and Nash)

58.     Plaintiffs incorporate the allegations in the preceding paragraphs, as if alleged herein.

59.     Mr. Bone, Mr. Miles, and other NFB members and blind constituents of Disability Rights NC are individuals with a disability protected by Section 504 of the Rehabilitation Act and qualified to receive health services from UNC and Nash.  *See* 29 U.S.C. § 794(a); 45 C.F.R. § 84.3(j).

15

60.     UNC and Nash are recipients of federal financial assistance from the Department of Health and Human Services and are subject to Section 504 of the Rehabilitation Act and its implementing regulations.  *See* 29 U.S.C. § 794; 45 C.F.R. § 84.3(h).

61.     Section 504 of the Rehabilitation Act provides that no qualified individual with a disability shall be subjected to disability-based discrimination under any program or activity receiving federal financial assistance.  29 U.S.C. § 794(a).

62.     Discrimination includes failing to "[a]fford a qualified handicapped person an opportunity to participate in or benefit from the aid, benefit, or service that is not equal to that afforded others," or providing qualified handicapped persons with "an aid, benefit, or service that is not as effective as that provided to others."  45 C.F.R. § 84.4(b)(1)(ii)-(iii); *see* 45 C.F.R. § 84.52(a)(2)-(3).

63.      Section 504 requires health programs or activities that receive federal financial assistance and that have at least fifteen employees to provide auxiliary aids and services, such as written notices and other documents in Braille, to individuals who are blind.  45 C.F.R. § 84.52(b), (d).

64.     A recipient may not directly or through contractual, licensing, or other arrangements, discriminate on the basis of disability.  45 C.F.R. § 84.4(b)(1).

65.     UNC and Nash's provision of health care constitutes a program or activity receiving federal financial assistance and, as recipients, they are required to ensure that both they and their contractors comply with Section 504 of the Rehabilitation Act.

66.     UNC and Nash have failed and are failing to meet their obligation to provide blind individuals an equal opportunity to use and benefit from their health care programs and activities.  In failing to provide blind patients like Mr. Bone and Mr. Miles with accessible

16

formats such as Braille and large print, UNC has refused to provide the auxiliary aids and services necessary to communicate with blind patients in an equally effective and timely manner that protects their privacy and independence.

67. Examples of UNC's, Nash's, and their contractors' inaccessible communications include, but are not limited to, notices, correspondence, forms, questionnaires, visit summaries, follow-up instructions, and billing information—all of which are delivered in standard print.

68. Because Mr. Bone, Mr. Miles, and other NFB members and Disability Rights NC constituents cannot independently access standard print, they must either find and rely on third-party assistance, which intrudes upon the privacy of their personal medical and financial information, or forego accessing their critical health care information altogether. UNC and Nash's failure to communicate in an equally effective manner with blind patients puts their health at risk and, as occurred with Mr. Bone, increases their chances of incurring fines and damaging their credit scores, due to late payment of medical bills received in standard print.

69. Accessible formats such as Braille and large print constitute auxiliary aids and services under the Section 504 regulations. 45 C.F.R. § 84.52(d)(3). Numerous governmental agencies and commercial entities already provide individual account and benefits information to blind persons in similar accessible formats.

70. As a result of UNC and Nash's actions and omissions, Mr. Bone, Mr. Miles, and other NFB members and Disability Rights NC constituents have suffered and will continue to suffer irreparable harm: they have suffered and continue to suffer from discrimination and unequal access to UNC's health care services. If there is no change in the status quo, Mr. Bone, Mr. Miles, and other NFB members and Disability Rights NC constituents will be denied their right to access and engage fully in the provision of their health care.

71. UNC and Nash's failure to meet their obligations to communicate with blind patients in an effective manner constitutes an ongoing and continuous violation of the ADA and its implementing regulations. Unless restrained from doing so, UNC and Nash will continue to violate the ADA. Unless enjoined, UNC and Nash's conduct will continue to inflict injuries for which Plaintiffs have no adequate remedy at law.

72. UNC and Nash's refusal to communicate with blind patients in an equally effective manner, through the provision of alternative formats, was done intentionally or with deliberate indifference to the protected rights of Mr. Bone, Mr. Miles, and other NFB members and Disability Rights NC constituents. For example, even after counsel for Plaintiffs wrote to Defendants, informed them that they were violating Section 504, among other laws, by failing to provide accessible formats for blind patients, and offered to work collaboratively to fix the problem, Defendants declined Plaintiffs' offer and continued to violate the law. Mr. Miles was unable to obtain large print documents during two of his latest visits to UNC medical practices and facilities in October 2018, after UNC had been notified of this issue by Plaintiffs' counsel.

73. Plaintiffs are entitled to injunctive relief, as well as reasonable attorneys' fees and costs. Mr. Bone and Mr. Miles are also entitled to compensatory damages.

## COUNT IV
## Violation of Section 1557 of the Patient Protection and Affordable Care Act
### (Against UNC and Nash)

74. Plaintiffs incorporate the allegations in the preceding paragraphs, as if alleged herein.

75. Mr. Bone, Mr. Miles, and other NFB members and blind constituents of Disability Rights NC are individuals with a disability protected by Section 1557 of the Affordable Care Act. *See* 45 C.F.R. § 92.4.

76.     UNC and Nash are covered entities operating health programs or activities that receive federal financial assistance.  *See* 45 C.F.R. § 92.4.

77.     Section 1557 of the Patient Protection and Affordable Care Act prohibits discrimination on the basis of disability in any health program or activity, any part of which receives federal financial assistance, including credits, subsidies, or health insurance contracts. 42 U.S.C. § 18116; 29 U.S.C. § 794.  The nondiscrimination standards under Section 1557 are at least as stringent as the standards under Section 504 of the Rehabilitation Act.  45 C.F.R. § 92.3.

78.     Discrimination includes failure by a covered entity to take appropriate steps to ensure communications with participants with disabilities are as effective as communications with participants without disabilities, including failure to furnish appropriate auxiliary aids and services when necessary to afford an equal opportunity to participate in the services and activities of the entity.  45 C.F.R. § 92.202; 28 C.F.R. § 35.160.  For the communications to be effective, auxiliary aids and services must be provided in accessible formats, in a timely manner, and in such a way as to protect the privacy and independence of the individual with a disability. 28 C.F.R. § 35.160.  Covered entities must give primary consideration to the requests of individuals with disabilities when considering what types of auxiliary aids and services are necessary.  *Id.*

79.     Auxiliary aids and services include qualified readers; taped texts; audio recordings; Braille materials and displays; screen reader software; magnification software; optical readers; secondary auditory programs; large print materials; accessible electronic and information technology; or other effective methods of making visually delivered materials available to individuals who are blind or have low vision.  45 C.F.R. § 92.4.

80.     Each covered entity must take appropriate initial and continuing steps to notify members of the public that it provides appropriate auxiliary aids and services, including information in alternate formats, free of charge and in a timely manner and how the public can obtain appropriate aids and services from the entity.  45 C.F.R. § 92.8(a).

81.     UNC and Nash have failed and are failing to meet their obligation to notify blind individuals of how they can obtain information in alternative formats.  UNC providers repeatedly misinformed Mr. Miles about his right to obtain information in large print and failed to disseminate any information to Mr. Bone or Mr. Miles about auxiliary aids and services during their medical visits.

82.     UNC and Nash have failed and are failing to meet their obligation to provide blind individuals an equal opportunity to use and benefit from their health care programs and activities.  In failing to provide blind patients like Mr. Bone and Mr. Miles with accessible formats such as Braille and large print, UNC has refused to provide the auxiliary aids and services necessary to communicate with blind patients in an equally effective and timely manner that protects their privacy and independence.

83.     Examples of UNC's, Nash's, and their contractors' inaccessible communications include, but are not limited to, notices, correspondence, forms, questionnaires, visit summaries, follow-up instructions, and billing information—all of which are delivered in standard print.

84.     Because Mr. Bone, Mr. Miles, and other NFB members and Disability Rights NC constituents cannot independently access standard print, they must either find and rely on third-party assistance, which intrudes upon the privacy of their personal medical and financial information, or forego accessing their critical health care information altogether.  UNC and Nash's failure to communicate in an equally effective manner with blind patients puts their

health at risk and, as occurred with Mr. Bone, increases their chances of incurring fines and damaging their credit scores, due to late payment of medical bills received in standard print.

85.     Accessible formats such as Braille and large print are auxiliary aids and services under the Section 1557 regulations.  45 C.F.R. § 92.4.  Numerous governmental agencies and commercial entities already provide individual account and benefits information to blind persons in similar accessible formats.

86.     As a result of UNC and Nash's actions and omissions, Mr. Bone, Mr. Miles, and other NFB members and Disability Rights NC constituents have suffered and will continue to suffer irreparable harm: they have suffered and continue to suffer from discrimination and unequal access to UNC's health care services.  If there is no change in the status quo, Mr. Bone, Mr. Miles, and other NFB members and Disability Rights NC constituents will be denied their right to access and engage fully in the provision of their health care.

87.     UNC and Nash's failure to meet their obligations to communicate with blind patients in an effective manner constitutes an ongoing and continuous violation of Section 1557 and its implementing regulations.  Unless restrained from doing so, UNC and Nash will continue to violate Section 1557.  Unless enjoined, UNC and Nash's conduct will continue to inflict injuries for which Plaintiffs have no adequate remedy at law.

88.     UNC and Nash's refusal to communicate with blind patients in an equally effective manner, through the provision of alternative formats, was done intentionally or with deliberate indifference to the protected rights of Mr. Bone, Mr. Miles, and other NFB members and Disability Rights NC constituents.  For example, even after counsel for Plaintiffs wrote to Defendants, informed them that they were violating Section 1557, among other laws, by failing to provide accessible formats for blind patients, and offered to work collaboratively to fix the

problem, Defendants declined Plaintiffs' offer and continued to violate the law. Mr. Miles was unable to obtain large print documents during two of his latest visits to UNC medical practices and facilities in October 2018, after UNC had been notified of this issue by Plaintiffs' counsel.

89.    Plaintiffs are entitled to injunctive relief, as well as reasonable attorneys' fees and costs. Mr. Bone and Mr. Miles are also entitled to compensatory damages.

**WHEREFORE**, Plaintiffs respectfully request that the Court grant the following relief:

1.    Declare that Defendants' failure to ensure that they and their contractors offer and provide information and other communications in accessible formats to blind individuals violates Titles II and III of the ADA, Section 504, and Section 1557;

2.    Declare that Defendants have a duty to provide equally effective access to all information they and their contractors provide to patients and patient representatives, including, but not limited to, notices, correspondence, forms, questionnaires, visit summaries, follow-up instructions, and billing information, in appropriately secure formats that are accessible to blind individuals, including Braille, large print, audio CD, and digital navigable formats supported by computers and/or digital talking-book players, transmitted through data CD, flash drive, e-mail, or other requested media;

3.    Grant a permanent injunction, requiring Defendants, their successors, agents, assigns, representatives, employees, and all persons acting in concert therewith, to develop and implement a comprehensive accessibility policy, including broad public notice and effective compliance monitoring of their contractors, to provide equally effective access to all information they and their contractors provide to patients and patient representatives, including, but not limited to, notices, correspondence, forms, questionnaires, visit summaries, follow-up

instructions, and billing information, in appropriately secure formats that are accessible to blind individuals, including Braille, large print, audio CD, and digital navigable formats supported by computers and/or digital talking-book players, transmitted through data CD, flash drive, e-mail, or other requested media;

4.      Award compensatory damages to Mr. Bone and Mr. Miles;

5.      Award Plaintiffs' reasonable attorneys' fees and costs, as provided by law; and

6.      Order such other and further relief as the Court deems just and proper.


This the 3rd day of December, 2018       Respectfully submitted,


/s/ Lisa Grafstein            

Lisa Grafstein, N.C. State Bar No. 22076
Christopher Hodgson, N.C. State Bar No. 50135
Disability Rights North Carolina
3724 National Drive, Suite 100
Raleigh, NC 27612
Phone: 919-856-2195
Fax: 919-856-2244
lisa.grafstein@disabilityrightsnc.org
chris.hodgson@disabilityrightsnc.org

Jessica P. Weber*
Brown, Goldstein & Levy, LLP
120 E. Baltimore Street, Suite 1700
Baltimore, MD 21202
Tel: 410-962-1030
Fax: 410-385-0869
jweber@browngold.com

*Attorneys for Plaintiffs*

_____
* Application for special appearance admission forthcoming